RECEIVED
IN LAKE CHARLES, LA.

FEB - 1 2013

TONY R. MOORE, CLERK
BY————————
                DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| RESTORE | : | DOCKET NO.2:12CV2602 |
| VS. | : | JUDGE MINALDI |
| BEAUREGARD WATER WORKS DISTRICT NO.3 | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is the defendant's, Beauregard Water Works District No. 3's (the "District"),

Motion to Dismiss (Rec. Doc. 4) for Lack of Jurisdiction pursuant to F.R.Civ.P. 12(b)(1). The

plaintiff, RESTORE, filed an opposition (Rec. Doc. 7) and the District filed a Reply (Rec. Doc. 9).

This matter is fully briefed and ready for disposition.

RESTORE filed this "citizen suit" on September 28, 2012, alleging ongoing violations of the

Safe Drinking Water Act (the "SDWA").

Applicable Law

Under the SDWA, Louisiana, through the Department of Health and Hospitals ("DHH-

OPH"), has primary enforcement authority for public water systems.[1] The SDWA specifically

addresses its intent for the states to have primary enforcement responsibility under the SDWA.[2] §

300g-2(a) states, ". . . a State has primary enforcement responsibility for public water systems during

---

[1] 42 U.S.C.A. § 300g-2 (West); *see e.g.* Public Water System Supervision Program Revision for the State of Louisiana, 68 Fed. Reg. 36548 (Jun. 9, 2003) (noticing Louisiana's adoption of a consumer confidence report rule for all community water systems.)

[2] 42 U.S.C.A. § 300g-2. State Primary Enforcement Responsibility.

any period for which the Administrator determines . . . that such State (1) has adopted drinking water regulations that are no less stringent than the national primary drinking water regulations promulgated by the Administrator. . ." and "(2) has adopted and is implementing adequate procedures for the enforcement of such State regulations, including conducting such monitoring and making such inspections as the Administrator may require by regulation . . ." The Louisiana Department of Health and Hospitals ("LDHH-OPH") has been delegated primary enforcement authority by the U.S. E.P.A. ("EPA") for public water systems under the SDWA.

In addition, where a state has been granted primary enforcement responsibility under the SDWA, the EPA's role is one of monitoring each state's conformity with the SDWA."The Section of the Safe Drinking Water Act (SDWA) providing that a state has primary enforcement responsibility for the public water systems during any period for which Administrator of Environmental Protection Agency (EPA) determines that a state satisfies primary criteria, does not relate only to a grant of primacy, but clearly envisions ongoing obligation on the part of the EPA to monitor each primary state's conformity." *National Wildlife Federation v. U.S. E.P.A.*, 980 F.2d 765, 771 (C.A.D.C.1992).

Facts

Under the LDHH – OPH's EPA-approved enforcement regime, the LDHH – OPH is responsible for sampling and analyzing substances that must be sampled pursuant to a compliance cycle/compliance[3] period schedule.[4] The LDHH – OPH bore sampling and analytical responsibility

---

[3] The terms "compliance cycle" and "compliance period" are defined in paragraphs 41 and 42 of RESTORE's Complaint.

[4] Center for Environmental Health, DEPT. OF HEALTH AND HOSPITALS WEBSITE, http://new.dhh.louisiana.gov/index.cfm/page/1290/n/285 (last visited Nov. 29, 2012) ("Safe Drinking Water Program

for all of the substances mentioned in RESTORE's Complaint except TTHM and HAA5. For those two parameters, the samples are collected by the District and sent to a third party laboratory with all analytical results are sent directly to the LDHH-OPH from the lab.

LDHH-OPH's main laboratory in Metairie, Louisiana, where it sends the samples it collects from the various water districts for analysis, was destroyed by Hurricane Katrina in 2005. Thus, the LDHH-OPH had no ability to perform analyses on samples it collected from the various water districts from 2005 until 2008, after which construction of a new laboratory was completed and the laboratory was reopened.

Under LDHH – OPH's EPA-approved enforcement regime, the District, as a "community water system,"[5] is responsible for sampling total coliform, lead and copper, and disinfectant byproducts such as total trihalomethanes (TTHMs) and haloacetic acids-five (HAA5). Ordinarily, a community water system tests for total coliform on a monthly basis,[6] tests for TTHMs and HAA5s, on a yearly basis and tests for lead and copper on an every three year basis.[7] If a test exceeds the maximum contaminant level ("MCL") for total coliform, i.e., is total coliformpositive, a water district must resample within 24 hours of notification of the positive result.[8][9] If a community water

---

staff collect, analyze and review water system samples to ensure each system does not violate contaminant levels and is meeting monitoring, analytical and treatment technique requirements. This surveillance helps prevent waterborne disease outbreaks or chemical exposure associated with contaminated drinking water.").

[5] The term "community water system" is defined in paragraph 19 of RESTORE's Complaint.

[6] 40 CFR 141.21(a)(2).

[7] See 40 CFR 141.86(d)(4) for lead and copper; See 40 CFR 141.132(b) Routine Monitoring Frequency for TTHM and HAA5.

[8] 40 CFR 141.21(b) Repeat monitoring: "(1) If a routine sample is total coliform-positive, the public water system must collect a set of repeat samples within 24 hours of being notified of the positive result. A system which collects more than one routine sample/month must collect no fewer than three repeat samples for each total coliform-

3

district fails to comply with the yearly TTHM and HAA5 testing requirement, it may be required to perform quarterly testing.[10]

The District is required to issue an annual Customer Confidence Report ("CCR") by July 1 of the next year (e.g. the 2010 CCR must issue by July 1, 2011). As a means to help insure that each water district complies with the CCR report content requirements of the SWDA, the LDHH – OPH issues a base report to each water district containing the entire contents of the CCR that is to be copied or converted by the water district into the final CCR that is distributed for the reporting year. The base report provided by the LDHH-OPH also contains the analytical results generated by the LDHH-OPH laboratory and analytical results generated by third-party laboratories that are sent directly to the LDHH-OPH. Thus, the LDHH-OPH specifically dictates the exact content of the final CCRs that are distributed for each reporting year. Because the LDHH – OPH has taken on the responsibility for sampling and testing inorganic substances such as fluoride, arsenic, cadmium and nitrate, each water district must rely upon the analytical results that the LDHH – OPH provides in the base CCR report.

On March 3, 2008, LDHH – OPH issued an enforcement action in the form of a Public Notice of Non-Compliance to the District indicating that it had failed to "monitor for total trihalomethanes (TTHMs) and haloacetic acids-five (HAA5) during the 2007 monitoring period." As a result of this violation and the enforcement action taken, the District was placed on quarterly

---

positive sample found."

   [9] 40 CFR 141.21(b) Repeat monitoring: "(2) The system must collect at least one repeat sample from the sampling tap where the original total coliform-positive sample was taken and at least one repeat sample at a tope within five service connections upstream and at least one repeat sample at a tap within five service connections downstream of the original sampling site."

   [10]  See 40 CFR 141.132(b) Routine Monitoring Frequency for TTHM and HAA5.

4

sampling for 2008 by the LDHH-OPH.[11] The District alleges that it timely issued all required notices to the public and certified the publication thereof to LDHH – OPH, as required by the SDWA.[12] The District then collected and submitted the required samples for the first, second and fourth quarters of 2008, as instructed by the enforcement action. Unfortunately, due to a transition in operations staffing, the District inadvertently failed to take and submit a sample for the third quarter of 2008.

In November 2008, LDHH – OPH notified the District of a total coliform sampling error regarding the date and time of sampling.[13] The LDHH laboratory analyzes the twenty (20) total coliform samples that the District collects each month. The District asserts that the sampling error consisted of one LDHH lab form that failed to include the sampling date and another form that didn't include the sampling time. The District considers this a technical violation which was allegedly immediately rectified. New samples with adequate documentation were provided and the District continued operations allegedly in full compliance with the SDWA.

On March 9, 2009, LDHH – OPH issued an enforcement action in the form of a Public Notice of Non-Compliance to the District indicating that one of twenty water supply samples for the period of March 1, 2009 through March 31, 2009, had exceeded the MCL for bacteriological tests (total coliform).[14] The District asserts that it performed all required repeat sampling and submitted those samples to the LDHH for subsequent testing, issued all required notices to the public, and

---

[11] *See* Mar. 3, 2008 Pub. Not of Non-Compliance attached to the District's brief as Exhibit A.

[12] *See* Apr. 30, 2008 Customer Notice attached to the District's brief as Exhibit B.

[13] *See* Lab Forms indicating that sample was unsatisfactory for analysis attached to the District's brief as Exhibit C.

[14] *See* Mar. 9, 2009 Pub. Not. of Non-Compliance attached to the District's brief as Exhibit D.

certified the publication to LDHH – OPH, as required by the SDWA.[15]

On May 29, 2009, LDHH – OPH issued an enforcement action in the form of a Public Notice of Non-Compliance to the District indicating that one of twenty water supply samples for the period of May 1, 2009, through May 31, 2009, had exceeded the MCL for bacteriological tests (total coliform).[16] The District performed all required repeat sampling and submitted those samples to the LDHH for subsequent testing, issued all required notices to the public, and certified the publication to LDHH – OPH, as required by the SDWA.[17] [18] [19]

On January 15, 2010, LDHH – OPH issued an enforcement action in the form of a Public Notice of Non-Compliance to the District indicating that it had failed to "monitor for total trihalomethanes (TTHMs) and haloacetic acids-five (HAA5) during the second and third calendar quarters of 2008 and the first, second, third and fourth calendar quarters of 2009."[20] The District asserts that the Public Notice of Non-Compliance was inaccurate because, in actuality, samples were taken and results submitted for the first, second and fourth quarters of 2008 but not the third quarter.

After submitting for three of the four quarters in 2008, the District mistakenly believed it had

---

[15] *See* March Customer Notice attached to the District's brief as Exhibit E.

[16] *See* May 29, 2009 Pub. Not. of Non-Compliance attached to the District's brief as Exhibit F.

[17] 40 CFR 141.21(b) Repeat monitoring: "(1) If a routine sample is total coliform-positive, the public water system must collect a set of repeat samples within 24 hours of being notified of the positive result. A system which collects more than one routine sample/month must collect no fewer than three repeat samples for each total coliform-postive sample found."

[18] 40 CFR 141.21(b) Repeat monitoring: "(2) The system must collect at least one repeat sample from the sampling tap where the original total coliform-positive sample was taken and at least one repeat sample at a tope within five service connections upstream and at least one repeat sample at a tap within five service connections downstream of the original sampling site."

[19] *See* May Customer Notice attached to the District's brief as Exhibit G.

[20] *See* Jan. 15, 2010 Pub. Not of Non-Compliance attached to the District's brief as Exhibit J

returned to yearly TTHM and HAA5 sampling and testing for 2009. Therefore, the District believed it was in full compliance by taking and submitting samples in the first quarter of 2009. The District did not realize that their assumption was incorrect until receiving the August 20, 2010 Public Notice of Non-Compliance. [21] After receiving the August 20, 2010 Public Notice of Non-Compliance for the first quarter of 2010, the District issued all required notices regarding its quarterly testing violations[22] and resumed quarterly testing for the second, third and fourth quarters of 2010. The District fully complied with TTHM and HAA5 quarterly sampling and testing requirements for 2011. The District has since returned to yearly TTHM and HAA5 sampling and testing for 2012.

On February 9, 2010, the LDHH – OPH issued an enforcement action in the form of an Administrative Order No. C-09-011-020-CCR-08, holding that the District failed to submit its 2008 Customer Confidence Report ("CCR") by the July 1, 2009, deadline, as well as other related violations.[23] On April 6, 2010, LDHH – OPH issued an Administrative Order Release terminating the Administrative order because the District had complied with all the terms of the February 9, 2010 Administrative Order.[24]

On September 8, 2011, the LDHH – OPH issued an enforcement action in the form of a Public Notice of Non-Compliance to the District indicating that a water supply sample for the period of August 1, 2011, through August 31, 2011 had exceeded the MCL for bacteriological tests (total

---

[21] *See* August 20, 2010 Pub. Not. Of Non-Compliance attached to the District's brief as Exhibit I.

[22] *See* First Quarter 2010 Customer Notice attached to the District's brief as Exhibit J.

[23] *See* LDHH- OPH Administrative Order No. C-09-011-020-CCR-08 attached to the District's brief as Exhibit K.

[24] *See* LDHH-OPH Administrative Order Release for Administrative Order No. C-09-011-020-CCR-08 attached to the District's brief as Exhibit L.

7

coliform).[25] The District allegedly performed all the required resampling and submitted those samples to the LDHH for subsequent testing, issued all required notices to the public and certified the publication to LDHH – OPH, as required by the SDWA.[26]

Law

RESTORE has brought a suit alleging ongoing violations of the SDWA. The District argues that any violations are "wholly past"[27] therefore RESTORE lacks standing to bring this suit.[28]

A motion to dismiss filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the court. FED. R. CIV. P. 12(b)(1). The court may dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995)).

On a Rule 12(b)(1) motion, the court is empowered to consider matters of fact which may be in dispute. *Id.* (citing *Williamson*, 645 F.2d at 413). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove

---

[25] *See* September 8, 2011 Pub. Not. Of Non-Compliance attached hereto as Exhibit M.

[26] *See* September 12, 2011 Customer Notice attached to the District's brief as Exhibit N.

[27] Page 1, The District's Brief in Support.

[28] The District argues that RESTORE alleges ongoing violations. The District claims this is an unsupported and unsupportable allegation. RESTORE argues that the District claims (but offers no proof) that it has stopped violating the SDWA. This is, however, a Rule 12(b)(1) motion to Dismiss. The merits of both arguments will be examined at another time.

any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

The court in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 56 (U.S. 1987), discussed ongoing violations as opposed to those which are wholly past under the SDWA. It is well settled that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The court reasoned that the most natural reading of "to be in violation" is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. *Id.* at 49.

The Supreme Court in *Gwaltney* held that the "to be in violation" language of § 505(a) [of the SDWA] is bolstered by the language and structure of the rest of the citizen suit provisions in § 505 of the Act. These provisions together make plain that the interest of the citizen-plaintiff is primarily forward-looking.

The court noted that one of the most striking indicia of the prospective orientation of the citizen suit is the pervasive use of the present tense throughout § 505. A citizen suit may be brought only for violation of a permit limitation "which is in effect" under the Act. 33 U.S.C. § 1365(f). Citizen-plaintiffs must give notice to the alleged violator, the Administrator of EPA, and the State in which the alleged violation "occurs." § 1365(b)(1)(A). A Governor of a State may sue as a citizen when the Administrator fails to enforce an effluent limitation "the violation of which is occurring in another State and is causing an adverse effect on the public health or welfare in his State." § 1365(h). The most telling use of the present tense is in the definition of "citizen" as "a person ... having an interest which is or may be adversely affected" by the defendant's violations of the Act.

§ 1365(g). This definition makes plain what the undeviating use of the present tense strongly suggests: the harm sought to be addressed by the citizen suit lies in the present or the future, not in the past. *Id.* at 59-60.

Both parties to the case at bar agree that this court lacks subject matter jurisdiction under *Gwaltney* if RESTORE'S complaint fails to make a good faith allegation that the District is in continuous or intermittent violation of the SDWA.

Restore's Complaint contains the following allegations (in pertinent part):

¶3 The violations alleged in this complaint are ongoing and include failure to collect required samples of dangerous contaminants, failure to follow requirements setting maximum levels of dangerous contaminants, failure to comply with federal monitoring and reporting requirements, misrepresenting data, failure to maintain a qualified operator to run the water system and falsely certifying compliance.

¶13 Plaintiff's members' injuries are actual, concrete and irreparable and cannot be adequately remedied by monetary damages. Upon information and belief, Defendant will continue to violate the SDWA until enjoined by this Court.

First Claim for Relief (TTHMs[29] & HAA5s[30] Violations)
¶32 The Water District fails to consistently monitor TTHM and HAA5 pursuant to 40 C.F.R. § 141.132(B)(1).

¶35 The Water District fails to consistently collect quarterly samples as the SDWA and DHH requires  pursuant to 40 C.F.R. § 141.132 and the DHH order.

¶36 For example, from 2007 to 2010, the Water District failed to collect the required samples for TTHMs and HAA5.

---

[29] Total trihalomethanes (TTHMs).

[30] Haloacetic acids-five (HAA5).

10

¶39 Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of SDWA and 40 C.F.R. § 141.132(b)(1).

 Second Claim for Relief (Fluoride Violation)

¶44  The Water District fails to consistently collect the required fluoride sample pursuant to 40 C.F.R. § 141.23(c)(1).

¶45 For example, from 2005 to 2007, the Water District failed to collect the required sample for fluoride in violation of 40 C.F.R. §141.23(c)(1).

¶46  The Water District also failed to sample for fluoride during the second compliance period (2005-07) of the second compliance cycle.

¶48  Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of the SDWA and 40 C.F.R. § 141.23(c)(1).

Third Claim for Relief (Arsenic Violation)

¶ 52  The Water District fails to consistently collect required sample for arsenic pursuant to 40 C.F.R. § 141.23(c)(1).

¶53  For example, from 2002 to 2007, the Water District failed to collect arsenic samples for the first compliance period (2002-04) and the second compliance period (2005-07) in  violation of 40 C.F.R. §141.23(c)(1).

¶55 Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of the SDWA and 40 C.F.R. § 141.23(c)(1).

Fourth Claim for Relief (Cadmium Violations)

¶58  In the second calendar year cycle (January 1, 2002 to December 31, 2010) the Water District had a duty to sample its water supply once every three year compliance period.

¶59  The Water District fails to consistently collect required sample of cadmium pursuant to 40 C.F.R. § 141.23(c)(1).

¶60 For example, public records from DHH and the Consumer Confidence Reports show that the Water District failed to take cadmium samples during the first compliance period (2002-04), and also failed to take cadmium samples during the second compliance period (2005-07), in violation of 40 C.F.R. §141.23(c)(1).

Failure to report cadmium results to customers

¶66  The Water District fails to consistently follow its reporting requirements pursuant to 40 C.F.R. §§ 141.152(b) and 141.153(d).

¶67  For example, in 2010, the Water District supplied customers with a 2009 Consumer Confidence Report. The 2009 report did not include results from a cadmium sample taken in 2009. The 2009 report also failed to list the pertinent required data related to the cadmium sample in violation of 40 C.F.R. §§ 141.152(b) and 141.153(d).

¶68  Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of the SDWA and 40 C.F.R. §§ 141.23(c)(1), 141.152(b) and 141.153(d).

Fifth Claim for Relief (Nitrate Violations)

¶70 The Water District fails to consistently collect the required sample for nitrate in violation of 40 C.F.R. §§ 141.23(d)(1) and 141.62(b).

¶71 For example, from 2005 to 2008, the Water District failed to collect the required sample for nitrates in violation of 40 C.F.R. §§ 141.23(d)(1) and 141.62(b).

¶73  Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of the SDWA and 40 C.F.R. §§ 141.23(d)(1) and 141.62(b).

Sixth Claim for Relief (Total Coliform Violations Exceeding MCL)

¶77 The Water District fails to consistently stay under the permissible level of coliform in violation of 40 C.F.R. § 141.63(a)(2).

¶78 For example, during the month of March 2009, the Water District exceeded the

MCL for coliform.

¶ 79  In May 2009, the Water District again exceeded the MCL for coliform in its 20 required samples.

¶80  In August 2011, the Water District again exceeded the MCL for coliform in its 20 required samples.

¶84  Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of the SDWA and 40 C.F.R. § 141.63(a)(2).

Seventh Claim for Relief (Consumer Confidence Report Violations)

¶87  The Water District fails to consistently comply with its statutory reporting requirements.

¶88  For example, for calendar year 2008, the Water District failed to prepare, distribute and publish a 2008 Consumer Confidence Report by July 1, 2009 in violation of 40 C.F.R. §§ 141.152(b) and 141.155(a).

Failure to Provide Current Information

¶90  The Water District fails to consistently comply with its statutory reporting requirements. 40 C.F.R. § 141.153(d)(3)(I).

¶91  For example, from 2004 to 2008, the Consumer Confidence Reports presented old data instead of current information. Thus, the Water District presented data that was not derived from information collected in compliance with the monitoring requirements of 40 C.F.R. § 141.153(d)(3)(I).

Detected Contaminates Not Listed

¶98  The Water District fails to consistently comply with its statutory reporting requirements under 40 C.F.R. § 141.153(d).

¶99  For example, in the 2008 Consumer Confidence Report, the Water District provided a table which purported to show the "regulated contaminants that have detectable levels."

¶100  From records received from DHH the following contaminants were detected but were not listed on the 2008 Consumer Confidence Report table showing "regulated contaminates that have detectable levels": bromodichloromethane, chloroform, dibromochloromethane, lead and TTHM.

Misinforming Consumers

¶105  The Water District fails to consistently follow its reporting requirements. 40 C.F.R. §§ 141.153(d)(1)(i) and 141.153(d)(4).

¶106   For example, in 2008 the Water District provided a Consumer Confidence Report to consumers which stated that "no DBP contaminants were found in 2008."

¶107  Public records from DHH show that DBP contaminants such as TTHM were detected in 2008.

Required Content Violation

¶109  The Water District fails to consistently list actions taken by the water system to address violations listed pursuant to 40 C.F.R. §§ 141.153(d)(6) and 141.153(f).

Required Content Violation: Failure to provide board meeting information

¶112   The Water District fails to consistently follow its statutory reporting requirements by failing to provide board meeting information on the Consumer Confidence Report.

¶113  For example, from 2004 to 2011 the Water District failed to provide the time and place of regularly scheduled board meetings in violation of 40 C.F.R. § 141.153(h)(4).

14

Eighth Claim for Relief (Certification Requirement Violation)

¶117  The Water District fails to consistently follow its statutory requirements for Consumer Confidence Reports and the SDWA.

¶118  For example, from 2004 to 2010 the Water District violated its reporting requirement pursuant to the SDWA reporting regulations in violation of 40 C.F.R. § 141.155(c).

¶119  From 2004 to at least 2010 the Water District has certified that the report provided has been distributed to customers, and that the information is correct and consistent with the compliance monitoring data previously submitted to the primacy agency. 40 C.F.R. § 141.155(c).

¶120  From 2004 to at least 2010 the Water District has not been in compliance with the SDWA and its reporting requirements.

¶121  From 2004 to at least 2010 the Water District has falsely certified compliance.

¶122  Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of the SDWA and 40 C.F.R. § 141.155(c).

Ninth Claim for Relief (Operator Violation)

¶128  In 2009, the Water District failed to identify a responsible person in charge and a certified operator for the water system, as required by state law and 40 C.F.R. § 141.130(c).

¶129  Upon information and belief, unless enjoined by this Court, Defendant will continue to violate the requirements of the SDWA under 40 C.F.R. § 141.130(c) and La. Admin. Code tit. 51 pt. XII § 309.

The district argues that this court does not have jurisdiction because they have taken the administrative steps required to cure each of the situations alleged in the complaint, making these occurrences "wholly past." RESTORE alleges continuing violations, however. RESTORE also

15

alleges a consistent failure to follow regulations.

The Supreme Court implicitly has held that federal courts have subject-matter jurisdiction over cases that assert a violation of a state-issued permits. In *Gwaltney,* the plaintiff alleged that "petitioner 'has violated ... [and] will continue to violate its NPDES permit.' " 484 U.S. at 54, 108 S.Ct. 376. The issue in *Gwaltney* was almost identical to the issue here. After concluding that there is no federal subject-matter jurisdiction over wholly past violations, the Court addressed whether a good-faith allegation that the defendants are continuing to violate a permit-condition confers jurisdiction over a citizen suit. The Court concluded: "[W]e agree that § 505 [33 U.S.C. § 1365] confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation." *Id.* at 64, 108 S.Ct. 376. The Court remanded the case so that the lower court could consider whether the complaint made such a good-faith allegation. *Id.* at 67, 108 S.Ct. 376. By so deciding, the Supreme Court implicitly decided that there is subject-matter jurisdiction over citizen suits that allege a violation of a state-issued permit as long as the violation is not wholly past. *Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993, 1007 ( 11th Cir. 2004).

Similarly, in *Woods Knoll, LLC v. City of Lincoln, Ala.,* 2012 WL 5379349, 4 (N.D.Ala. 2012), the district court held that Woods Knoll had standing to assert its Clean Water Act ("CWA") claims. Although it is well established that "[c]itizens can only bring a citizen suit under the CWA for ongoing or continuous violations, not for those that are wholly in the past," *Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993, 1009 (11th Cir.2004) (citing *Gwaltney of Smithfield Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 556–63, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) *(Gwaltney I), superceded by statute on other grounds as recognized in Parker,* 386 F.3d at 1005), "plaintiffs need not *prove* their allegations of ongoing noncompliance before jurisdiction attaches under [the

citizen suit provision].... Instead, a good faith allegation of violations that continued at the time suit was filed is sufficient for jurisdictional purposes." *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128, 1133 (11th Cir.1990) (citing *Gwaltney I,* 484 U.S. at 64).

In the instant case, both parties argue an absence of proof of their respective positions.  In a motion to dismiss,  sufficiency of the pleading is the key issue, not proof.[31]  RESTORE, in this case, has, in good faith,  sufficiently pleaded continuing violations of the SDWA.  Therefore, the motion to dismiss will be denied.

Lake Charles, Louisiana, this 30 day of  January, 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[31]  Many of the issues raised in this motion will be more properly before the court in the context of a motion for summary judgment at which time the court will weigh the evidence of the allegations.

17